IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FAITH BLITMAN, | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| NORTHEAST TREATMENT | : | |
| CENTERS, INC., d/b/a NORTHEAST | : | |
| TREATMENT CENTERS, | : | No. 21-4318 |
| *Defendant.* | : | |

## **MEMORANDUM**

PRATTER, J.                                                                                                                    AUGUST 30, 2023

    Faith Blitman, who was diagnosed with cancer in June 2019, initiated this action against her former employer—Northeast Treatment Centers, Inc.—alleging violations of the Americans with Disabilities Act (ADA) and the Pennsylvania Human Relations Act (PHRA). Northeast moved for summary judgment as to all of Ms. Blitman's claims. For the reasons that follow, the Court grants Northeast's motion for summary judgment.

### BACKGROUND

    Faith Blitman was hired by Northeast Treatment Centers, Inc. on or about May 10, 2019 as a substance abuse counselor. The written job description for this position provides that an essential job function is that "[t]he Counselor will maintain an active caseload of clients." Ex. 3, Def.'s Mot. for Summ. J. From 2019 to 2021, a full caseload consisted of approximately 35 to 40 cases. When Ms. Blitman first started as a counselor, she had approximately 30 cases. Her caseload later increased because of staffing shortages.

    On July 30, 2019, Ms. Blitman was diagnosed with multiple myeloma, a blood plasma cancer. Ms. Blitman alleges that her cancer impacts her daily living activities because it causes her intense and chronic pain. Her cancer also causes memory problems, affects her energy and stamina,

1

and her cancer treatments cause her to suffer from extreme fatigue. Ms. Blitman admits that she could not handle a full caseload after her cancer diagnosis.

In June 2020, Ms. Blitman informed Northeast's Director of Human Resources that she was a cancer patient and inquired about leave under the Family and Medical Leave Act (FMLA), which Northeast granted. Ms. Blitman began intermittently taking FMLA leave beginning in July 2020. Northeast offered Ms. Blitman a leave of absence and an opportunity to work in less challenging positions, but Ms. Blitman declined.

In August 2020, Ms. Blitman and her doctor submitted a Request for Reasonable Accommodation form to Northeast requesting a reduced caseload. Northeast sought clarification from Ms. Blitman's doctor regarding this request in September 2020. On October 1, 2020, Ms. Blitman filed a Charge of Discrimination against Northeast with the Equal Employment Opportunity Commission (EEOC) alleging disability discrimination and retaliation.[1] Subsequently, on October 8 and 13, 2020, Ms. Blitman had discussions regarding her requested accommodation with Northeast and on October 14, 2020, Northeast granted Ms. Blitman's request for an accommodation. Specifically, Northeast reduced Ms. Blitman's caseload to 25 cases until further notice.

Ms. Blitman alleges that her supervisor, Jermaine Hoskins, attempted to add a new client to her caseload, exceeding her reduced caseload of 25 clients. Ms. Blitman alleges that this occurred on at least two or three other occasions, and that each time, she objected. Ms. Blitman asked for clarification from Mr. Hoskins regarding the additional client he sought to add. Mr. Hoskins took the position that the new client was not being added to her caseload but rather was being added to one of her existing group sessions. Ms. Blitman argues that this still exceeded her

---

[1] On January 13, 2021, Ms. Blitman filed a second charge with the EEOC claiming that Northeast retaliated against her.

2

25-client caseload limit because she would be required to complete treatment paperwork for this client. When Ms. Blitman objected to the addition of new clients to her caseload, she contends that Mr. Hoskins did not respond to her. However, in light of her objections, the new client was not added to her group session.

Mr. Hoskins emailed Amanda Cress—another supervisor at Northeast—regarding Ms. Blitman's objection to the addition of another client to her group, stating "[s]he's just complaining as usual, but her complaints have no merit." Ex. 17, Def.'s Mot. for Summ. J. Mr. Hoskins also wrote that "I feel us giving in would set the stage for future issues." *Id.* According to Ms. Blitman, Mr. Hoskins's reference to her "complaining as usual" was a reference to her October 2020 EEOC charge, however, it is not clear whether Mr. Hoskins had actual knowledge of this charge.

From January 25, 2021 to April 16, 2021, Ms. Blitman was on FMLA leave. When she returned, she emailed Mr. Hoskins and requested that they meet to discuss her caseload. Ms. Blitman alleges that Mr. Hoskins agreed to schedule appointments with her but then cancelled, allegedly without any basis. She further contends that Mr. Hoskins failed to provide her with requested assistance upon her return. However, on April 22, 2021, just days after she returned from leave, Ms. Blitman and Mr. Hoskins met to discuss her caseload, which was still reduced to 25 clients. In May 2021, Northeast approved additional accommodations for Ms. Blitman, including a work from home accommodation and a continued reduced workload, effective until October 2021.

Ms. Blitman advised Northeast that effective June 9, 2021, she would be voluntarily terminating her employment with Northeast. Ms. Blitman testified that she resigned because of her health and her cancer treatments, and because she felt that she was no longer in a position to work.

On October 1, 2021, Ms. Blitman filed her complaint against Northeast alleging disability discrimination and retaliation under the Americans with Disabilities Act (ADA) and the Pennsylvania Human Relations Act (PHRA). Northeast filed a motion for summary judgment which has now been fully briefed and argued, making it ripe for resolution.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Id.* "When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The court does not itself "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court looks for "sufficient evidence" on which a reasonable jury could decide for the non-movant. *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252.

The movant bears the initial responsibility to establish the basis for the motion for summary judgment and to identify the portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on an issue, the moving party's initial burden can be met simply by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met its initial burden, the

non-moving party, here Ms. Blitman, must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

Ms. Blitman alleges disability discrimination and retaliation under the Americans with Disabilities Act (ADA) and the Pennsylvania Human Relations Act (PHRA). The PHRA claims will be analyzed coextensively with the ADA claims. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (concluding that "the district court properly treated [the plaintiff's] PHRA claims as coextensive with his ADA and ADEA claims" because Pennsylvania courts "generally interpret the PHRA in accord with its federal counterparts" including the ADA).

### I. Discrimination Claims

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to [the] discharge of employees . . . and [the] privileges of employment." 42 U.S.C. § 12112(a). The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). "An employer discriminates against a qualified individual when it does 'not mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the

5

operation of the business of the [employer.]'" *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 579 (3d Cir. 1998) (quoting 42 U.S.C. § 12112(b)(5)(A)). "Reasonable accommodation" means measures such as "job restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9).

To present a *prima facie* case of discrimination under the ADA, the plaintiff must demonstrate that "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul*, 134 F.3d at 580.

### A. Ms. Blitman Is a Disabled Person Under the ADA

Under the ADA, "disability" is defined, in part, as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). "For purposes of [defining disability under the ADA], a major life activity . . . includes the operation of a major bodily function, including but not limited to, functions of the immune system [and] normal cell growth." 42 U.S.C. § 12102(2)(B). "[C]ancer can—and generally will—be a qualifying disability under the ADA." *Alston v. Park Pleasant, Inc.*, 679 F. App'x 169, 172 (3d Cir. 2017); *see also Kogan v. T-M Auto., Inc.*, No. 22-cv-519, 2023 WL 2588550, at *3 (E.D. Pa. Mar. 20, 2023) (concluding that plaintiff had a qualifying disability under the ADA because he had cancer); *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 513 (E.D. Pa. 2012) (noting that the 2008 ADA amendments were adopted to address cancer, among other conditions). Ms. Blitman is a disabled person under the ADA based on her cancer diagnosis.

6

### B. Ms. Blitman Is Not a Qualified Individual Under the ADA

As set forth above, to bring a claim under the ADA, the plaintiff must establish that he or she is a "qualified individual" and can perform the essential functions of the job, with or without accommodations. 42 U.S.C. § 12111(8). "[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id.*

"[T]he burden is on the employee to prove that [s]he is 'an otherwise qualified' individual." *Gaul*, 134 F.3d at 580 (citing *Shiring v. Runyon*, 90 F.3d 827, 832 (3d Cir. 1996)). To determine whether the employee has met this burden, courts employ a two-part test. *Id.* First, the court considers whether "the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." *Id.* (quoting 29 C.F.R. pt. 1630, App. at 353 (2016)). Second, the court considers "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Gaul*, 134 F.3d at 580 (quoting 29 C.F.R. pt. 1630, App. at 353). "The determination of whether an individual with a disability is qualified is made at the time of the employment decision." *Gaul*, 134 F.3d at 580 (quoting 29 C.F.R. pt. 1630, App. at 353–54).

In its Statement of Undisputed Facts in support of its motion for summary judgment, Northeast asserts that (1) "[a]n essential job function for the full-time counselor position that [Ms. Blitman] held is to regularly maintain an active case load which consists of a full as opposed to a partial caseload"; and (2) "[i]n the 2019 through 2021 time period, a full caseload consisted of approximately 35 patient or client cases and sometimes as much as 40 cases." Def.'s S.U.M.F. ¶¶ 10, 11. In support of these facts, Northeast relies on the job description for the counselor position

7

Ms. Blitman held which provides that an essential responsibility was that "[t]he Counselor will maintain an active caseload of patients," Ex. 3, Def.'s Mot. for Summ. J., and the declaration of Northeast Site Director Hans Semezier. In her response to the statement of material facts, Ms. Blitman admitted both of these facts.[2] However, Ms. Blitman testified that she was not able to handle a full caseload after she was diagnosed with cancer. Pl.'s Dep. Tr., at 37:11–13.

Northeast argues that an essential function of the counselor position was working an active or full caseload, which consisted of approximately 35 to 40 cases. It further argues that because Ms. Blitman could not maintain a full caseload after her diagnosis, as confirmed by Ms. Blitman during her deposition, she is not a "qualified individual" under the ADA and thus Northeast is entitled to summary judgment on her ADA claim.[3]  42 U.S.C. § 12111(8); *see e.g., Anderson v. Arizona*, No. CV06-00817-PHX-NVW, 2007 WL 1461623, at *6 (D. Ariz. May 16, 2007) (concluding that by plaintiff's own admission that she was unable to work 35 cases, she was not qualified to perform an essential function of her job which was to maintain a full caseload consisting of approximately 35 cases).

---

[2]     Ms. Blitman's response to paragraph 10 is as follows: "Admitted Plaintiff so testified. By way of further answer, Defendant agreed to limit Plaintiff's caseload as a reasonable accommodation for her disability." Pl.'s Resp. to Def's S.U.M.F. ¶ 10. Her response to paragraph 11 is as follows: "Admitted Defendant claims this is the case. By way of further answer, Defendant agreed to limited Plaintiff's caseload as a reasonable accommodation for her disability and did not assert this or any other objection at the time it granted the reasonable accommodation request." *Id.* ¶ 11.

[3]     Northeast also argues that Ms. Blitman cannot be a qualified individual because she rejected Northeast's offer to work in a less challenging position. *See* 29 C.F.R. § 1630.9(d) (providing that if an "individual rejects a reasonable accommodation . . . and cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered qualified"); *Yovtcheva v. City of Phila. Water Dep't*, 518 F. App'x 116, 121–22 (3d Cir. 2013) (concluding that plaintiff was not a "qualified individual" because she refused to use a reasonable accommodation made available to her by her employer). Reassignment to another position is a reasonable accommodation under the ADA. 42 U.S.C. § 12111(9)(B). However, Northeast provides no evidence of what these other positions were, nor does it expound on how these positions would be "less challenging." Because of the lack of evidence in the record on this issue, and in light of the conclusion that Ms. Blitman was unable to perform an essential function of the role without an accommodation, the Court will not consider whether Ms. Blitman was a qualified individual based on her rejection of these other positions.

Ms. Blitman does not dispute, or even address in its response, Northeast's assertion that an essential function of the counselor position was to maintain an active or full caseload of approximately 35 to 40 cases. Rather, she argues that she is a qualified individual under the first prong of the test because she has a background in drug and alcohol counseling, there is no evidence that she had job performance issues before her cancer diagnosis, and there is ample evidence that she was qualified for the role.[4] *See Gaul*, 134 F.3d at 580.

Ms. Blitman failed to satisfy her burden of establishing a genuine dispute of material fact as to whether maintaining an active caseload is an essential function of the counselor position. Fed. R. Civ. P. 56(c)(1). Rule 56 requires her to set forth specific facts demonstrating a genuine dispute of fact by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Ms. Blitman has pointed to no evidence whatsoever which demonstrates that maintaining an active caseload is *not* an essential function of the counselor position. Ms. Blitman did not effectively dispute this fact in response to Northeast's motion for summary judgment. Given Ms. Blitman's admission that an essential job function for the full-time counselor position is to regularly maintain an active case load, and the utter lack of evidence (or argument) to the contrary, the Court concludes that maintaining an active caseload of approximately 35 to 40 cases is an essential function of the counselor position held by Ms. Blitman.

Ms. Blitman also failed to satisfy her burden of proving that she is a qualified individual. Ms. Blitman testified that she was not able to maintain an active caseload following her cancer

---

[4] It is not disputed that Ms. Blitman possessed the requisite "educational background, employment experience, skills, licenses, etc." for the counselor position she was hired for. *Gaul*, 134 F.3d at 580.

diagnosis,[5] and as the Court concluded, maintaining an active caseload is an essential function of the counselor position held by Ms. Blitman. The Court cannot find that Ms. Blitman is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Thus, Ms. Blitman has not met her burden of proving that she is a qualified individual. *See Gaul*, 134 F.3d at 580.

Because a plaintiff must prove that they are a qualified individual to bring a claim under the ADA, and because Ms. Blitman has failed to prove that she is a qualified individual, the Court grants Northeast's motion for summary judgment as to Ms. Blitman's discrimination claims under the ADA and the PHRA. *Cf. Gera v. Cnty. of Schuylkill*, 617 F. App'x 144, 146 (3d Cir. 2015) ("It is undisputed that [Plaintiff] could not perform the essential functions of a regular duty correctional officer. . . . No reasonable accommodation existed that would have enabled [Plaintiff] to perform this [essential] function. Accordingly, [Plaintiff] was not a qualified individual, and his disability discrimination claim fails."); *Tumbler v. Am. Trading & Prod. Corp.*, No. 96-cv-8566, 1997 WL 230819, at *2 (E.D. Pa. May 1, 1997) (dismissing plaintiff's discrimination claims under the ADA because the plaintiff was not a qualified individual as he could not perform the essential functions of his employment).

### C. Failure to Accommodate

Ms. Blitman argues that Northeast failed to accommodate her because (1) it attempted to add additional patients to her reduced caseload of 25 cases, and (2) it failed to communicate with her regarding her accommodation after she objected to the addition of new patients to her caseload.

---

[5] Ms. Blitman testified during her deposition in relevant part as follows: "Q: Okay. Were you able to still handle a full caseload at NET after the diagnosis? A: It was very difficult. I would say no." Pl.'s Dep. Tr., at 37:11–13.

"Once an employee has requested an accommodation, the employer has a duty to engage in an 'interactive process' aimed at designing a reasonable accommodation for the employee's disability, if possible." *Bernhard v. Brown & Brown of Lehigh Valley, Inc.*, 720 F. Supp. 2d 694, 700 (E.D. Pa. 2010). "The goal of the interactive process is to help identify the precise limitations of the employee's disability and the potential options that could reasonably accommodate those limitations." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). "An employee can demonstrate that an employer breached its duty to provide reasonable accommodations because it failed to engage in good faith in the interactive process by showing that: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504 (3d Cir. 2010) (internal quotation marks omitted).

Where the employer provides the employee with a reasonable accommodation, summary judgment is appropriate on a failure to accommodate claim under the ADA. *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (affirming the grant of summary judgment because the record did not support a failure to accommodate claim where the "[employer] provided and [the employee] received the accommodation he asked for"). However, "[a]n employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide *some* reasonable accommodation." *Yovtcheva*, 518 F. App'x at 122 (emphasis added). An accommodation which excuses the employee from an essential job function is "unnecessary under the ADA, as an employer need not eliminate the essential functions of a position in order to accommodate an employee's disability." *Meyers v. Conshohocken Catholic Sch.*, No. 03-cv-4693,

2004 WL 3037945, at *9 (E.D. Pa. Dec. 30, 2004); *accord Tardie v. Rehab. Hops. of R.I.*, 168 F.3d 538, 544 (1st Cir. 1999) ("We have previously held that an employer need not accommodate a disability by foregoing an essential function of the job.").

"[I]t is well-established that the interactive process requirement does not dispose of an employee's burden to demonstrate that he or she could have performed the essential functions of a position with a reasonable accommodation." *Rich v. Verizon N.J., Inc.*, No. 16-cv-1895, 2017 WL 6314110, at *22 (D.N.J. Dec. 11, 2017) (citing *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 193 (3d Cir. 2009)); *accord Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317 (3d Cir. 1999) ("The interactive process does not . . . remove the employee's burden of showing that a particular accommodation rejected by the employer would have made the employee qualified to perform the job's essential functions."). "[I]f the employee 'is not a 'qualified individual' under the ADA, . . . [the employer's] alleged failure to investigate into reasonable accommodation is unimportant.'" *Hohider*, 574 F.3d at 193 (quoting *Gaul*, 134 F.3d at 581). Thus, summary judgment is appropriate on a failure to accommodate claim where the plaintiff fails to prove that they are a qualified individual under the ADA. *See, e.g., Rich*, 2017 WL 6314110, at *22 ("Plaintiff has not established that he is a 'qualified individual,' because he failed [to] proffer evidence sufficient for a reasonable jury to find that he is capable of performing the [essential functions of the] position . . . with or without a reasonable accommodation. Accordingly, Plaintiff's interactive process claim necessarily also fails, and the Court will grant summary judgment in [Defendant's] favor as to Plaintiff's failure to accommodate claim.").

Here, the Court has concluded that Ms. Blitman is not a qualified individual under the ADA because she cannot perform an essential function of the counselor role—maintaining an active or full caseload of approximately 35 to 40 cases. It follows that Ms. Blitman cannot succeed on her

failure to accommodate claim.[6] *See Hohider*, 574 F.3d at 193; *Taylor*, 184 F.3d at 317; *Rich*, 2017 WL 6314110, at *22. The Court grants Northeast's motion for summary judgment as to Ms. Blitman's failure to accommodate claims.

### D. Hostile Work Environment

Ms. Blitman also raises a hostile work environment claim. "[T]he ADA creates a cause of action for a hostile work environment." *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 666 (3d Cir. 1999) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 180 (1989)). To state a claim for hostile work environment, the plaintiff must show that: "(1) [she] is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) that [the employer] knew or should have known of the harassment and failed to take prompt effective remedial action." *Walton*, 168 F.3d at 667. "To judge whether such an environment is hostile or abusive, [the court] must consider all the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted). Rather, the

---

[6] Northeast argues that because maintaining an active caseload of 35 to 40 cases was an essential function of the role, the accommodation provided to Ms. Blitman—a reduced caseload of 25 cases—went above and beyond what was required because an employer is not required to eliminate an essential function of the position in providing an accommodation to the employee. *See Meyers*, 2004 WL 3037945, at *9; *Tardie*, 168 F.3d at 544.

13

conduct must "create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *Harris*, 510 U.S. at 21.

As a threshold matter, Ms. Blitman's hostile work environment claim fails because she has not proven that she is a qualified individual under the ADA. *See Walton*, 168 F.3d at 667. However, even if Ms. Blitman were a qualified individual, her hostile work environment claim still fails.

It is undisputed that Ms. Blitman considers the following acts "hostile": (1) Mr. Hoskins not meeting with her to discuss her caseload when she returned from her three-month leave in April 2021, (2) Northeast not providing her with her requested accommodations, (3) Northeast employees contacting her during her chemotherapy sessions, (4) Mr. Hoskins cancelling appointments with her, and (5) Mr. Hoskins's email to her and other Northeast employees stating that she was complaining as usual.

The record demonstrates that most of these allegedly hostile actions were not related to Ms. Blitman's disability. *See Walton*, 168 F.3d at 667 (requiring that a plaintiff must show "the harassment was based on her disability or a request for an accommodation"). First, Mr. Hoskins met with Ms. Blitman four business days after her return from leave. Although this meeting did not occur as soon as Ms. Blitman would have liked, it certainly took place shortly after she returned. There is also evidence that Mr. Hoskins was busy with other work at the time, which contributed to this short delay. Second, Northeast did provide Ms. Blitman with her requested accommodations. Third, Ms. Blitman testified that the calls made during her chemotherapy sessions were wholly unrelated to her disability. Fourth, the evidence supports the conclusion that Mr. Hoskins cancelled appointments with Ms. Blitman because he was preoccupied with other work obligations, not because of her disability.

The only allegedly hostile action which could be construed as being "based on her disability or a request for an accommodation" is Mr. Hoskins's email regarding Ms. Blitman's complaints because the email was in response to Ms. Blitman's objection to Mr. Hoskins's attempt to add another client to her caseload. *Walton*, 168 F.3d at 667. Because Ms. Blitman's reasonable accommodation was a reduced caseload of 25 clients, it is possible to construe Mr. Hoskins's email action as being based on her accommodation.

Even construing this email as being based on Ms. Blitman's request to accommodate her disability, Mr. Hoskins's conduct is simply not extreme enough to "create an objectively hostile or abusive work environment." *Harris*, 510 U.S. at 21. Rather, Mr. Hoskins's comment is more properly likened to an "offhand comment[]," or an "isolated incident[]." *Faragher*, 524 U.S. at 788. This single action is not sufficient to "amount to discriminatory changes in the terms and conditions of [Ms. Blitman's] employment." *Id.* (internal quotation marks omitted); *see also Wright v. Providence Care Ctr., LLC*, 822 F. App'x 85, 96–97 (3d Cir. 2020) (concluding that the "handful of incidents that appear to have been spread out over the course of many months"— including receiving negative performance reviews, being ignored, and being told to collect disability benefits—which plaintiff cites to in support of her hostile work environment claim, were not "severe enough to alter the conditions of her employment and to create an abusive working environment"); *Walton*, 168 F.3d at 667 & n.4 (concluding that the comments and actions which the plaintiff contends were harassing—telling plaintiff she would be fired if she didn't attend a graduation, calling her repeatedly asking when she would return to work, etc.—when considered both individually and together, fall short of establishing a hostile work environment because the "[plaintiff] simply has not demonstrated that the asserted harassment was pervasive or severe enough").

15

For these reasons, the Court grants Northeast's motion for summary judgment as to Ms. Blitman's hostile work environment claims.

## II. Retaliation Claim

The retaliation provision of the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]." 42 U.S.C. § 12203(a). ADA retaliation claims are analyzed under the same framework the Third Circuit employs to analyze Title VII retaliation claims. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

"To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Id.* Where an employee successfully establishes a *prima facie* case of retaliation, "the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action." *Id.* The employer's burden is satisfied if it "articulates any legitimate reason for the [adverse employment action]; the defendant need not prove that the articulated reason actually motivated the [action]." *Id.* at 500–01 (alteration in original) (citing *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997)).

Where the employer satisfies this burden, the plaintiff must then establish that the employer's proffered reason is false and that it was pretextual, meaning that "retaliation was the real reason for the adverse employment action." *Krouse*, 126 F.3d at 501. To establish pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that

an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

It is undisputed that Ms. Blitman's October 2020 Charge of Discrimination filed with the EEOC is protected employee activity.

### A. Adverse Employment Action

To establish an adverse employment action in the context of a retaliation claim, the "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). "[I]t is important to separate significant from trivial harms [because an] employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* The anti-retaliation provision seeks to "prohibit[] employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers. And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* (internal quotation marks and citations omitted).

Ms. Blitman alleges that the following acts were retaliatory: (1) Mr. Hoskins sending an email to supervisors at Northeast on January 8, 2021 stating that Ms. Blitman "was just complaining as usual, but her complaints have no merit"; (2) Mr. Hoskins trying to put more clients on her caseload; and (3) Mr. Hoskins breaking plans to meet with her on several occasions.

The first two allegedly retaliatory acts fail to meet the "material adversity" standard set forth in *Burlington* because these actions did not dissuade Ms. Blitman "from making . . . a charge of discrimination." *Burlington*, 548 U.S. at 68. Mr. Hoskins's attempts to add more clients to Ms.

Blitman's caseload occurred in December 2020 and January 2021. Similarly, Mr. Hoskins's email regarding Ms. Blitman's complaints was sent on January 8, 2021. These acts all took place *before* Ms. Blitman filed a second Charge of Discrimination with the EEOC on January 13, 2021 and obviously did not chill Ms. Blitman's exercise of the option to file charges with the EEOC. The acts will not support a retaliation claim. *See Rubano v. Farrell Area Sch. Dist.*, 991 F. Supp. 2d 678, 708 (W.D. Pa. 2014) (concluding that an employer's conduct was not materially adverse, and thus did not constitute an adverse employment action when it "did not deter [the plaintiff] from filing a subsequent EEOC charge.").

The final allegedly retaliatory action—Mr. Hoskins cancelling appointments to meet with Ms. Blitman—took place when Ms. Blitman returned from her three-month leave in April 2021, meaning it took place *after* the second EEOC charge was filed. Despite the cancelled meetings, Mr. Hoskins and Ms. Blitman *did* meet to discuss her caseload and her accommodations four business days after her return from leave. Although this meeting may not have taken place as soon as Ms. Blitman wanted, it still took place within a week of her return. Cancelled appointments and delayed meetings are merely "petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington*, 548 U.S. at 68. This conduct is not "materially adverse" such that a reasonable employee would be dissuaded from raising his or her concerns *Id.*

Ms. Blitman has failed to establish that she suffered an adverse employment action, thus her retaliation claims must necessarily fail.[7] The Court grants Northeast's motion for summary judgment as to Ms. Blitman's retaliation claim.

---

[7]    Ms. Blitman's retaliation claim also fails because she did not establish "a causal connection between the employee's protected activity and the employer's adverse action." *Krouse*, 126 F.3d at 500. Ms. Blitman was required to show that her "protected activity was a but-for cause of the alleged adverse action by the employer." *Tomaszewski v. City of Phila.*, 460 F. Supp. 3d 577, 599 (E.D. Pa. 2020) (citation omitted). Here, Ms. Blitman attributes the allegedly retaliatory actions to Mr. Hoskins, but she has not introduced evidence which shows that Mr. Hoskins was aware of Ms. Blitman's October 2020 EEOC

**CONCLUSION**

For the reasons set forth above, the Court grants Northeast's motion for summary judgment in full as to Ms. Blitman's failure to accommodate, hostile work environment, and retaliation claims under the ADA and the PHRA. An appropriate order follows.

BY THE COURT:

<u>s/ Gene E.K. Pratter</u>
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

charge. Where the supervisor charged with the adverse employment action has no knowledge of the plaintiff's protected employment activity, courts have concluded that the requisite causation for a retaliation claim is lacking and have granted summary judgment for the employer. *See, e.g., Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007) (finding that employer's adverse actions were not causally connected to the plaintiff's protected employment activities where the plaintiff did "not proffer[] any evidence that the supervisors responsible for the alleged adverse actions were aware that [the plaintiff] had informally complained to the EEO office"); *Calero v. Cardone Indus., Inc.* No. 11-cv-3192, 2012 WL 2547356, at *8 (E.D. Pa. June 29, 2012) (finding a lack of causation where "there [wa]s no evidence in the record that [the decisionmakers] had any knowledge of [the plaintiff's] FMLA requests when making the termination decision"). The lack of evidence establishing Mr. Hoskins's knowledge of the EEOC charge is fatal to Ms. Blitman's retaliation claim because she cannot establish a causal connection between her disability and Mr. Hoskins's actions.